**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| GIOVANNI HENRIQUEZ-OSORIO, | Case No. 2:26-cv-00234-RFB-BNW |
| Petitioner, | **ORDER GRANTING WRIT OF HABEAS CORPUS** |
| v. | |
| KRISTI NOEM, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Giovanni Henriquez-Osorio's First Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center ("NSDC") in the custody of the Federal Respondents. For the following reasons, the Court grants the Petition and orders Respondents provide Petitioner a renewed bond hearing that adheres to the standards set forth in this Order.

Petitioner premises this action on the following arguments: (1) Petitioner's continued detention under 8 U.S.C. § 1225(b)(2) violates the INA and his right to due process under the Fifth Amendment; and (2) Petitioner's initial bond hearing did not comport with due process, thus his continued detention pursuant to the decision issued in said bond hearing violates his due process rights under the Fifth Amendment. In their return, Respondents first argue that Mr. Henriquez-Osorio has been detained at NSDC without opportunity for release on bond because he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) based on the allegation that he is "present in the United States without admission and [ ] subject to removal proceedings." See ECF No. 12 at 10-14. Respondents further argue that if this Court were to find Petitioner's detention is controlled by § 1226(a), the Court may order a bond hearing pursuant to the statute; however, Respondents' position is that an "IJ would have no basis to rule contrary to the July 15, 2025,

determination" because "[t]here has been no change in circumstances that would warrant an alternate finding." Id. at 21-23.

The Court makes the following findings of fact based on the record before it. Mr. Henriquez-Osorio is a native and citizen of El Salvador, who entered the United States without inspection in 2013, fleeing persecution from his home country's government. See ECF No. 9 at 3. Over twelve years of residency, Petitioner built a number of significant familial and financial ties to our country: prior to his detention, he was living with his partner and infant son in Provo, Utah and had steady, fulltime work with a local construction company for over eight years. See id. However, on March 21, 2025, Immigration and Customs Enforcement ("ICE") officers tailed Petitioner as he was leaving work in Provo before forcibly pulling him from his vehicle and arresting him. See id.; ECF No. 12-3 at 4. Petitioner was then held in the Utah County Jail until June 5, 2025, when he was then transferred to ICE custody and transported to NSDC. See ECF No. 12-3 at 3. To-date, he has been detained in the custody of Federal Respondents at NSDC for over nine months. See ECF No. 9 at 3.

On July 15, 2025, Petitioner appeared before an Immigration Judge ("IJ") in the Las Vegas Immigration Court for a custody redetermination (*i.e.*, bond) hearing. See ECF No. 12-4. At the hearing, the IJ denied Petitioner bond, offering only a conclusory statement in their written opinion: "Denied, because Respondent is a danger to the community." Id. Despite the dearth of reasoning, Respondents argue this finding was based on Petitioner's "criminal history, outstanding warrants and membership in MS-13." ECF No. 12 at 23. Through a Form I-213, dated June 5, 2025, Respondents assert similar bases for Petitioner's initial arrest by ICE agents: "ERO Officers made the decision to conduct a vehicle extraction to remove Henriquez from the vehicle due to special knowledge of Henriquez being a document[ed] MS-13 gang member [redacted] and also has an active local warrant for assault in Orem, Utah." ECF No. 12-3 at 4. However, based on the evidence provided to this Court by the parties, the Court finds that Petitioner had no active, outstanding warrants at the time of the I-213 Form's writing or the July bond hearing; the warrant in question, warrant number 2833891, was recalled on March 22, 2025, and the case tied to the warrant was resolved on June 3, 2025, when the Utah state court sentenced Mr. Henriquez-Osorio

to 30 days in jail for Disorderly Conduct (a class C misdemeanor) with full credit for time-served. See ECF No. 12-3 at 28, 32. Further, no evidence of Petitioner's supposed MS-13 membership has been provided to this Court, nor the immigration court it seems, based on the immigration judge specifically noting that the government failed to provide evidence to support said allegation. See ECF No. 17 at 2.

The Court first addresses Respondents' assertion that Petitioner is subject to mandatory detention under § 1225(b)(2)(A). Consistent with its prior decisions, the Court rejects Respondents' and Hurtado's statutory interpretation of § 1225(b)(2)(A) as applied to noncitizens like Petitioner, who was arrested by ICE far from any border or port of entry after years of residence in this country. Therefore, Petitioner's detention is authorized only under the discretionary detention authority of §1226(a) for the reasons discussed in detail in this Court's previous decisions, which the Court incorporates and adopts by reference in this case. See, e.g., Escobar Salgado v. Mattos, ---- F.Supp.3d ---, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); Jacobo Ramirez v. Noem, --- F. Supp. 3d ---, No. 2:25-CV-02136-RFB-MDC, 2025 WL 3270137, at *7-11 (D. Nev. Nov. 24, 2025). Because he is detained under the authority of §1226(a), Petitioner is entitled to a bond hearing.

The Court now turns to Petitioner's due process challenges to his continued detention in light of his initial bond hearing's deficiencies. The Court first incorporates by reference the legal authorities and standards set forth in Escobar Salgado regarding the due process rights of noncitizens in Petitioner's position. 2025 WL 3205356, at *22-24; see also Padilla v. U.S. Immig. and Cust. Enf't, 704 F. Supp. 3d 1163 (W.D. Wash. 2023). To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"). Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor weighs heavily in support of Petitioner and his sought-after relief. Petitioner's private interest in being free from imprisonment—"the most elemental of liberty interests"—is substantial: he has been detained for nearly one year, eight months of which has elapsed since his initial bond hearing, *i.e.*, the last time the government had to provide any justification for his continued detention. Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

The second factor too weighs in Petitioner's favor based on the risk that he is currently being deprived of his liberty due to error in his initial bond proceeding, a risk that is mitigated through added procedures in line with controlling circuit precedent. Because the record presented to the IJ and used to make a finding of dangerousness contained factually incorrect information, *i.e.*, false information about the existence of an outstanding warrant and unsubstantiated allegations of a relation to MS-13, and because the IJ did not provide any individualized findings that undergirded a dangerousness determination, there is an undeniable risk that the procedures used at the initial bond hearing deprived Petitioner of his freedom. Moreover, Petitioner's proffered additional procedures—a renewed bond hearing wherein the government must prove by clear and convincing evidence that he is a flight risk or a danger to the community to justify denial of bond— are merely adherence to Ninth Circuit precedent. See Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) ("Given the substantial liberty interest at stake . . . we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond.") abrogation on other grounds recognized by Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022); see also Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community"). The probable value of a renewed bond hearing, wherein the government must adhere to these standards is therefore high, given that it would substantially mitigate the risk that Petitioner continues to be detained by Respondents based on legal or factual error.

On the last factor, the Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. However, the government has failed to articulate any individualized reason why detaining Petitioner without a renewed, procedurally proper bond hearing serves those interests. As a result, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore v. Kim, 538 U.S. 510, 532-33 (Kennedy, J. concurring).

For these reasons, and consistent with its prior decisions, the Court finds that Respondents' continued detention of Petitioner without a renewed bond hearing adhering to the requirements set forth in this Order and without providing any individualized, constitutionally recognized justification for his continued detention violates his procedural and substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *22-24. The Court therefore orders Respondents to provide Petitioner a constitutionally adequate bond hearing pursuant to 8 U.SC. § 1226(a) and its implementing regulations, wherein the government bears the burden of establishing, by clear and convincing evidence, an individualized, constitutionally recognized interest in civilly detaining Petitioner, *i.e.*, that his detention is necessary to prevent danger to the community or to ensure his future appearance at removal proceedings. See Singh, 638 F.3d at 1203; see also Martinez, 124 F.4th at 785.

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," and considering the constitutional injury Petitioner has suffered and continues to suffer due to Respondents continued enforcement of unlawful detention policies, the Court orders Respondents to provide a bond hearing in accordance with this Order promptly, no later than **March 16, 2026**, or immediately release him from custody on his own recognizance. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968).

Based on the foregoing **IT IS HEREBY ORDERED** that the (ECF No. 9) First Amended Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a

constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a), where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence, no later than **March 16, 2026**. The immigration court must create a contemporaneous record of the bond hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208, and consider Petitioner's financial circumstances as well as possible alternative release conditions in setting bond, see Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017).

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERERD** that Petitioner be afforded until **April 16, 2026** to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found the regulatory automatic stay is facially unconstitutional and adopts that finding here. See Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **March 16, 2026**, Respondents must **IMMEDIATELY RELEASE PETITIONER** from custody **ON HIS OWN RECOGNIZANCE**.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner during the pendency of his current removal proceedings unless and until it is determined that his detention is warranted under § 1226(a) after a constitutionally adequate bond hearing.

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **March 17, 2026**. The status report shall detail if the bond hearing occurred, if bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted or the bond hearing has not occurred, the status report shall confirm Petitioner's release from detention in compliance with this Order.

The Clerk of Court is instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to the 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** March 11, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**