**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

GIOVANNI HENRIQUEZ-OSORIO,

Petitioner,

v.

MARKWAYNE MULLIN,[1] *et al*.,

Respondents.

Case No.: 2:26-cv-00234-RFB-BNW

**ORDER ENFORCING (ECF NO. 21) CONDITIONAL WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Giovanni Henriquez-Osorio's (ECF No. 25) Motion to Enforce this Court's March 11, 2026, Order and Judgment (ECF Nos. 21, 22) Granting Writ of Habeas Corpus under 28 U.S.C. § 2241 [hereinafter, "Motion"]. For the following reasons, the Court finds that Federal Respondents did not comply with this Court's conditional writ. The Court therefore grants the Motion to Enforce and orders Petitioner's immediate release on personal recognizance.

**I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner Giovanni Henriquez-Osorio has been held in civil immigration detention by Respondents for over one year—since June 5, 2025. See Order Granting Writ of Habeas Corpus at 2, ECF No. 21 [hereinafter, "Order Granting Writ"]. He entered this country over a decade ago, fleeing persecution from El Salvador, and built a life in Provo, Utah, where he lived with his

---

[1] Acting Secretary of the Department of Homeland Security Markwayne Mullin is substituted for Respondent Kristi Noem, Acting Attorney General Todd Blanche is substituted for Respondent Pam Bondi, and Acting Director of U.S. Immigration and Customs Enforcement (ICE) David J. Venturella is substituted for Respondent David Lyons. See Fed. R. Civ. P. 25(d).

partner and his infant U.S. citizen son and worked full time for a local construction company for over eight years. See id.

In July 2025, an immigration judge ("IJ") denied Petitioner's custody redetermination, concluding without detail that Petitioner is a danger to the community. See id.; accord Federal Respondents' Response to Amended Petition for Writ of Habeas Corpus, Ex. C, ECF No. 12-4. During that hearing, the Department of Homeland Security ("DHS") submitted an I-213 Form that was created by an ICE Deportation Officer in June 2025 containing allegations that Petitioner was a member of MS-13 and stated that he had an outstanding warrant for arrest. See Order Granting Writ at 2.

On March 11, 2026, this Court granted Petitioner's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, which challenged the lawfulness of his detention at Nevada Southern Detention Center. See generally Order Granting Writ. The Court found that Petitioner "had no active, outstanding warrants at the time of the I-213 Form's writing or the July 2025 bond hearing." Id. It also found that no evidence of Petitioner's supposed gang membership was presented to it or the IJ. See id. at 2–3. The Court ordered that "Respondents must provide Petitioner with a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a), where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence, no later than March 16, 2026." Id. at 6. The Court ordered that the immigration court must "consider Petitioner's financial circumstances as well as possible alternative release conditions in setting bond." Id. (citation modified). It ordered Petitioner's immediate release if bond was granted or if a constitutionally adequate bond hearing was not held by March 16, 2026, and permanently enjoined Respondents from detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A). See id.

On March 16, 2026, an IJ denied Petitioner's bond redetermination based upon a finding that he is a "[d]anger to the community" due to "DUI and domestic violence convictions. Probation violation and warrants issued for his arrest. Did not appear for state court hearing and probation was terminated as unsuccessful." Motion, Ex. 1, ECF No. 25-1 at 2.

## II.    DISCUSSION

### A.  Relevant Legal Standards

When this Court granted Petitioner a writ of habeas corpus, "it declare[d] in essence" that Petitioner was "being held in custody in violation of his constitutional (or other federal) Rights." Harvest v. Castro, 531 F.3d 737, 741 (9th Cir. 2008) (citing 28 U.S.C. § 2254(a); and Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody[.]")). However, rather than the traditional remedy of "unconditional release from custody," this Court employed a conditional order of release, which afforded the government an opportunity to promptly "take[] some remedial action" or release Petitioner on personal recognizance. See id. at 741–42 (citing Wilkinson v. Dotson, 544 U.S. 74, 89 (2005) (Kennedy, J., dissenting) (describing the "common practice of granting a conditional writ," that is, "ordering that a State release the prisoner or else correct the constitutional error through a new hearing").

"When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." Rose v. Guyer, 961 F.3d 1238, 1246 (9th Cir. 2020) (first quoting Jensen v. Pollard, 924 F.3d 451, 454 (7th Cir. 2019), then citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)). If the government "fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody." Id. (quoting Harvest, 531 F.3d at 750) (emphasis in original).

Upon the filing of a motion to enforce a conditional writ, "a district court must decide whether [the government] has complied with the remedy designed in the underlying habeas proceedings." Id. at 1246 (citing Jensen, 924 F.3d at 454–55). "This decision will in turn determine whether" the government "cured the constitutional violation adjudicated in the habeas proceedings or whether the petitioner is entitled to immediate release from his unconstitutional detention." Id. (citing Jensen, 924 F.3d at 454–55; and Gentry v. Deuth, 456 F.3d 687, 692 (6th Cir. 2006)).

When deciding whether to release an immigrant on bond, an immigration judge "must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." In re Guerra,

24 I. & N. Dec. 37, 40 (BIA 2006). Immigration judges may look to a number of factors in determining whether an immigrant merits release on bond, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. (citation modified).

The Ninth Circuit explained in Martinez v. Clark that "the determination whether an alien is dangerous for immigration-detention purposes is a mixed question of law and fact and is reviewable as a question of law." 124 F.4th 775, 779 (9th Cir. 2024) (citation modified) (collecting cases). The district court reviews the immigration court's dangerousness determination for "abuse of discretion." Id. at 779–80. When reviewing an immigration court's bond determination, a habeas court should take the immigration court "at its word" that it applied the correct burden of proof and reviewed all the evidence in the record. Id. at 785. But when there are "red flags"—for example, if the immigration court "misstates the record or fails to mention highly probative or potentially dispositive evidence"—then the habeas court must not credit the immigration court's "catchall phrase to the contrary." Id. (citation modified).

"Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce in the ultimate factfinder an abiding conviction that the asserted factual contentions are highly probable." OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc., 897 F.3d 1008, 1020 (9th Cir. 2018) (citation modified); accord Addington v. Texas, 441 U.S. 418, 432–33 (1979) (explaining that due process requires the standard to "inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard").

**B. Jurisdiction**

Although Federal Respondents do not raise jurisdiction as an issue, see generally Federal Respondents' Response to Motion to Enforce, ECF No. 29 [hereinafter, "Response"], consistent

- 4 -

with the Ninth Circuit's decision in Martinez, the Court finds it has jurisdiction to consider whether Petitioner's bond hearing and bond determination complied with its conditional writ requiring a constitutionally adequate bond hearing by March 16, 2026, where the burden to establish Petitioner's dangerousness or flight risk would be shifted to the government, and the IJ considered Petitioner's financial circumstances as well as possible alternative release conditions in setting bond. See 124 F.4th at 784 (holding the district court had jurisdiction to review the IJ's and BIA's bond determination for compliance with the Due Process Clause, and its habeas order, which "require[d] the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing").

### C. Administrative Exhaustion

Federal Respondents argue that Petitioner's proper recourse is to file a an appeal with the BIA. See Response at 2–3 (citing Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022)). This habeas court is authorized "to review compliance with its earlier order conditionally granting habeas relief." Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011). This Court has catalogued numerous habeas proceedings in which it issued a conditional writ, giving Federal Respondents an opportunity to cure the petitioner's unlawful detention by providing him or her a prompt and constitutionally adequate bond hearing, only to later determine that "DHS and the immigration courts have repeatedly defied the dictates of those orders, requiring post-judgment enforcement." Alberto v. Mattos, No. 2:26-CV-01441-RFB-BNW, 2026 WL 1847394, at *9 n.6 (D. Nev. June 26, 2026) (collecting cases). The Court incorporates its findings and reasoning from Alberto and the cases it compiles, and on those bases finds that waiver of the exhaustion requirement is appropriate in this case.

### D. Compliance and Constitutional Adequacy of Petitioner's Bond Hearing

The IJ did not state on the record that the government bore the burden to establish by clear and convincing evidence that Petitioner is a danger to the community. Rather, it made a blanket statement at the outset that the hearing was "in accordance with" this Court's conditional writ order. March 16, 2026, Hr'g Audio Recording at 2:24–2:38, ECF No. 27 (manually filed) [hereinafter, "Recording"]. DHS and the IJ obliquely referred to the conditional writ throughout

the hearing, never once fully expressing what the government's burden was under the writ. See generally Recording. This is concerning. And as outlined below, there are red flags with the IJ's bond determination because it misstates the record as providing that Petitioner has "domestic violence" convictions. So the Court does not credit the IJ's blanket statement that it complied with the conditional writ.

DHS's sole argument during the hearing was that it met its burden to show Petitioner "poses a danger to the community" because he was found to be a danger to the community during the July 2025 bond hearing, and the dangerousness analysis has not changed since that hearing. Recording at 22:58–26:07. DHS did not identify which part(s) of the record it believed showed that Petitioner is a danger to the community. Id. The record consisted of Petitioner's testimony during the hearing and the I-213 Form and Removal Order filed by DHS. See Motion at 5–6, ECF No. 25; accord Recording at 2:25–4:38. The I-213 Form includes dockets for the following state court cases: Spanish Fork City v. Giovanni Henriquez, No. 201300324 (4th Jud. Dist. for Utah County, Utah), ECF No. 12-3 at 6–14; Spanish Fork City v. Giovanni Henriquez, No. 205300593 (4th Jud. Dist. for Utah County, Utah), ECF No. 12-3 at 15–25; and Orem City v. Giovanni Ernesto Henriquez, No. 221901008 (4th Jud. Dist. for Utah County, Utah) [hereinafter "Docket Sheets" (collectively)]. See Federal Respondents' Response to Amended Petition for Writ of Habeas Corpus at 2–32, Ex. B, ECF No. 12-3 [hereinafter, "I-213"].

The docket for the first case states that Petitioner was convicted under a guilty plea entered on September 17, 2020, to "Charge 1" of "Disorderly Conduct" under Utah Code § 76-9-102, a Class B misdemeanor that was amended to a Class C misdemeanor, for conduct that happened on March 28, 2020. Docket Sheets at 6 (emphasis omitted); accord id. at 10. The docket states "Domestic Violence" under "[a]ttributes" for Charge 1. Id. at 6. The docket also states, "This case involves domestic violence." Id. And the docket states that the only other charge—no valid license—was dismissed with prejudice. See id. (emphasis omitted); accord id. at 10.

The docket for the second case states that Petitioner was convicted under a guilty plea entered on September 18, 2020, to "Charge 1" of "Driving Under the Influence of Alcohol/Drugs – Class B Misdemeanor" under Utah Code § 41-6A-502 for conduct that happened on May 31,

2020. Docket Sheets at 15 (emphasis omitted); accord id. at 18–19. The docket states that the other two charges for invalid license and public urination were dismissed with prejudice. See id. at 15, 18–19.

The docket for the third case states that Petitioner was convicted under a guilty plea entered on June 3, 2025, to "Charge 1" of "Disorderly Conduct" under Utah Code § 76-9-102(1), a Class B misdemeanor that was amended to a Class C misdemeanor, for conduct that happened on September 5, 2022. Docket Sheets at 26; accord id. at 31–32. The docket states there were no other charges. See id. at 26. The docket states "Domestic Violence" under "[a]ttributes" for Charge 1. Id. And it states, "This case involves domestic violence." Id.

The IJ repeatedly stated during the hearing that Petitioner had been convicted of domestic violence charges. See Recording at 27:28, 29:25, 30:15, & 37:22. Each time, Petitioner denied the IJ's characterization of his criminal convictions as being domestic violence. See id. Immediately after stating—yet again—that Petitioner was "convicted of domestic violence[,]" the IJ denied Petitioner bond, explaining that:

> [T]he Court finds that the best predictor of future behavior is past behavior. Based upon the totality of the evidence, the Court finds that you do not have a fixed address here in the United States. Being convicted of both DUI and domestic violence shows that you are willing to endanger others. Other than one child you have no other family here in the United States. You don't have any property here in the United States. Your case is on appeal. However the Court finds that in the past you have violated probation and terms of release therefore your request for a bond is denied.

Recording at 37:22–39:08.

Characterizing Petitioner's disorderly conduct convictions as "domestic violence" convictions misstates the record because the docket sheets do not clearly indicate that Petitioner pled guilty to conduct amounting to domestic violence. See U.S. v. Strickland, 601 F.3d 963, 970 (9th Cir. 2010) (in context of determining whether a Maryland child abuse conviction could serve as predicate for "sexual abuse" enhancement, the Ninth Circuit explained that although the docket sheet stated the defendant pled guilty to violating a statute that includes both "physical injury" and "sexual abuse" of a child, two entries on the docket sheet clarified matters because the first said that "defendant is a child sex offender," and the second stated that registration was required under

Maryland's registry of "sexual offenders and child sexual offenders"). Petitioner was convicted of violating Utah Code § 76-9-102 in March 2020 and September 2022. See Docket Sheets at 6, 26. Unlike the statute at issue in Strickland that mentioned both physical injury and sexual abuse of a child, § 76-9-102 does not mention domestic violence. Compare Utah Code § 76-9-102 (eff. May 12, 2020, to May 6, 2025), with Utah Code § 76-9-102 (eff. to May 11, 2020); accord State v. Anderson, 169 P.3d 778, 780–83 & n.1 (Utah Ct. App. 2007) (Explaining that § 76-9-102 "is titled "'Disorderly Conduct' and does not refer to domestic violence. Whether a conviction involves domestic violence is governed by Utah Code sections 77-36-1 and 30-6-1" and holding disorderly conduct under § 76-9-102 "qualifies as a domestic violence offense only if the defendant was first charged with any of the more serious crimes listed in" § 77-36-1(2), "and then pleaded to the lesser offense of disorderly conduct.") (citation modified).

Characterizing Petitioner's DUI conviction as proof of his willingness to endanger others also misstates the record because the docket sheets do not clearly indicate that Petitioner pled guilty to conduct amounting to willful conduct or conduct that harmed any person or property. Petitioner was convicted of violating Utah Code § 41-6a-502. See Docket Sheets at 15, 18–19. Unlike the statute at issue in Strickland, § 41-6a-502 does not have a mens rea requirement and thus punishes intentional, accidental, and negligent conduct alike.

The IJ also stated that "when you were released on bond you failed to appear for court and warrants were issued for your arrest," Recording at 36:48–36:54, but the record does not reflect that statement. See Docket Sheets at 26–32.

In sum, the record did not reflect the seriousness of Petitioner's crimes, and the IJ misconstrued the facts to form its legal conclusion that Petitioner is a danger to the community because he has harmed people or property in the past. In addition, the IJ did not properly consider the factors set forth in Guerra because it assumed the crimes' seriousness. The Court thus finds the IJ abused its discretion in finding that Petitioner was a danger to the community. The Court also finds that the March 16, 2026, bond hearing failed to comply with the Court's conditional writ that required that *the government bear the burden* of establishing Petitioner's dangerousness or flight risk. See Order Granting Writ at 6, ECF No. 21. And it concludes that the hearing and the IJ's

bond determination were based on the ordinary procedures under § 1226(a), which place the burden of establishing eligibility for release on bond *on the detainee*, in violation of this Court's habeas Order. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (explaining that an initial bond hearing under § 1226(a) requires the detainee to demonstrate "by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,'" to obtain release) (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); Matter of Barreiros, 10 I. & N. Dec. 536, 537–38 (B.I.A. 1964)).

Because the Court finds that Federal Respondents failed to comply with this Court's conditional writ, which required the government to bear the evidentiary burden at Petitioner's "constitutionally adequate" bond hearing by March 16, 2026, "or immediately release him from custody on his own recognizance[,]" Petitioner is entitled to immediate release on personal recognizance. See Rose, 961 F.3d at 1246 (If the government "fails to cure the constitutional error, *i.e.*, when it fails to comply with the order's conditions, . . . the conditional grant of habeas corpus *requires* the petitioner's release from custody.").

### III.    CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** Petitioner's (ECF No. 25) Motion to Enforce Judgment is **GRANTED**. The Court enforces its judgment and **HEREBY ORDERS** the following:

(1) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on **PERSONAL RECOGNIZANCE** on **July 17, 2026,** between the hours of **12:00 and 3:00 p.m.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Respondents may impose reasonable conditions on Petitioner's release in an Order of Supervision, except that they are **PROHIBITED** from imposing electronic monitoring, a curfew, or a similar restriction on Petitioner's liberty, without having first established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If

ICE or DHS impose release conditions in violation of this Order, the Court will consider contempt sanctions against all individuals responsible for the imposition of such conditions.

(2) Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE**. If DHS or ICE fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** the parties must file a joint status report by **July 20, 2026**, confirming Respondents' compliance with this Order including (i) the date and time of Petitioner's release and (ii) ICE/DHS' compliance with this Court's directives concerning release on personal recognizance.

The Clerk of the Court is kindly instructed to substitute Markwayne Mullin for Respondent Kristi Noem, Todd Blanche for Respondent Pam Bondi, and David J. Venturella for Respondent Todd Lyons under Federal Rule of Civil Procedure 25(d).

**DATED:** July 16, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**